

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| JAMES RAYMOND KING, | ) | No. ED111783 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 19SL-CC00423 |
| | ) | |
| MISSOURI AMERICAN WATER CO., | ) | Honorable Joseph L. Walsh III |
| | ) | |
| Respondent. | ) | Filed:  June 4, 2024 |

James Raymond King ("Plaintiff") appeals the trial court's grant of summary judgment entered in favor of defendant Missouri American Water Co. ("Employer") on Plaintiff's petition alleging claims for disability discrimination in violation of the Missouri Human Rights Act ("MHRA"), a hostile work environment in violation of the MHRA, retaliation in violation of the MHRA, and workers' compensation retaliation in violation of section 287.780 RSMo Cum. Supp. 2018.[1]  We affirm in part and reverse and remand in part.

---

[1] All further statutory references are to RSMo Cum. Supp. 2018 (effective from August 28, 2017, to the present).

# I.    BACKGROUND

## A.    The Relevant Facts in the Summary Judgment Record

Viewing the record in the light most favorable to Plaintiff, the party against whom summary judgment was entered, the facts relevant to this appeal are as follows.[2]  Plaintiff worked for Employer beginning in April 1998 until his termination in February 2018.  While working for Employer in 2010, Plaintiff enlisted in the Illinois National Guard for a six-year term.  From 2011 to 2012, Plaintiff served on active duty and was deployed in Afghanistan.

After returning from Afghanistan and while still working for Employer, Plaintiff began suffering from post-traumatic stress disorder ("PTSD").  In 2016, Plaintiff began treatment with a licensed clinical professional counselor ("Counselor") for his PTSD.  Counselor recommended to Plaintiff that a service dog would assist him in coping with his PTSD symptoms, which included panic attacks and anxiety.  Plaintiff subsequently requested an accommodation from Employer for a service animal, and Employer approved the request in April 2016.

Beginning in May 2016, Plaintiff began experiencing what he described as "an intimidating, hostile[,] and offensive work environment" because of his alleged disability.  After Plaintiff was issued a service dog, Employer found a suitable work task for him which involved delivering mail.  However, Plaintiff's supervisor ("Supervisor") refused to assign the task to Plaintiff and instead assigned it to another employee, telling Plaintiff he was looking for "special treatment."  Supervisor also told Plaintiff "he was not disabled," "having a service dog was a joke," and that "nobody was going to tell her what to do with her employee."  Supervisor excluded Plaintiff from several celebratory free lunches provided by Employer, and when

---

[2] In determining whether summary judgment is appropriate, our Court must view the record in the light most favorable to the non-movant, accepting all reasonable inferences in favor of that party as true. *B.B. v. Methodist Church of Shelbina, Missouri*, 541 S.W.3d 644, 650 (Mo. App. E.D. 2017).  The facts set out in this case are taken from Plaintiff's admissions to statements of material facts and from other materials accompanying Employer's motion for summary judgment, and the parties' responses and replies thereto. *See id*.

Plaintiff asked Supervisor why she did this, she replied, "dog hair." In November 2016, after Plaintiff commented on the merits of medical marijuana use by veterans, Supervisor told Plaintiff he had to submit to a drug test, threatened to fire him if he refused to do so, and refused to let Plaintiff drive home from work that day without the approval of human resources. At some point in 2017, Supervisor told Plaintiff she was going to find a way to fire him, that it was "just a matter of time" before she did so, and that Plaintiff was "on his last days." On multiple other occasions in 2017, Supervisor refused to allow Plaintiff to leave work for scheduled medical appointments. Supervisor called Plaintiff "Fluffy" in an apparent reference to his service dog, and continued to do so after Plaintiff told her to stop. Throughout his employment, Plaintiff made multiple complaints to Employer's human resources representative ("HR Representative") regarding Supervisor's conduct.

On December 21, 2017, an incident occurred between Plaintiff and Supervisor as they drove their separate vehicles into work that morning (the "December 2017 incident"), the factual details of which are disputed by the parties. Supervisor alleged she was followed on her drive into work that morning by a black pickup truck which drove "very closely" behind her vehicle for several miles at various speeds, changing lanes multiple times. Supervisor claims the vehicle eventually followed her into a gas station and followed her as she circled the pumps, causing her to call 911 out of fear.

Plaintiff admitted to driving behind Supervisor's vehicle at some point during his commute into work that morning, but denies following her vehicle closely, speeding, or changing lanes in the manner Supervisor described. Plaintiff claims that at one point he honked his horn to get Supervisor's attention and she recognized him after turning to look in his direction, in contrast to Supervisor's claim that she was "followed on her drive to work that morning by a black pickup truck operated by an unknown driver." Plaintiff further stated that after he saw

3

Supervisor turn into the gas station, he pulled into the gas station "with the intention of buying [Supervisor] a cup of coffee and giving it to her while she put gas in her car." Plaintiff denies following Supervisor's vehicle around the gas pumps.

Following the December 2017 incident, Supervisor filed a complaint with Employer against Plaintiff, which resulted in Employer suspending Plaintiff from work on December 26, 2017 pending an investigation. On February 16, 2018, Plaintiff received a termination letter which stated that after a "thorough investigation," it was determined his conduct during the December 2017 incident, as alleged by Supervisor, violated Employer's "Workplace Conduct and Behavior Practice." The termination letter officially ended Plaintiff's employment, and Employer offered no additional reason for the termination beyond the December 2017 incident.

B.      **The Relevant Procedural Posture**

Plaintiff subsequently filed a petition against Employer alleging claims for disability discrimination in violation of the MHRA, a hostile work environment in violation of the MHRA, retaliation in violation of the MHRA, and workers' compensation retaliation in violation of section 287.780. Employer filed an answer, then later filed a motion for summary judgment with an accompanying statement of material facts and supporting materials. Employer's motion for summary judgment argued it was entitled to judgment as a matter of law on all claims in Plaintiff's petition, because, *inter alia*: (1) Plaintiff could not establish he was disabled under the MHRA; (2) Employer had a legitimate, non-discriminatory and non-retaliatory reason for terminating Plaintiff, and Plaintiff could not establish pretext; (3) the harassment alleged by Plaintiff was "objectively insufficient as a matter of law" to constitute a hostile work environment; (4) there was no evidence of a causal connection between the complaints of harassment by Plaintiff and his termination; and (5) there was no evidence of a causal connection between work-related injury reports made by Plaintiff and his termination. Plaintiff then filed a

4

response to Employer's motion for summary judgment, a response to Employer's statement of material facts, and a statement of additional material facts, along with supporting materials for each. Employer filed a response to Plaintiff's statement of additional material facts along with supporting materials.

The trial court granted summary judgment in favor of Employer on all claims in Plaintiff's petition. Specifically, the trial court found, *inter alia*, that: (1) Plaintiff could not claim he was legally disabled under the MHRA due to the application of judicial estoppel and therefore could not establish a prima facie case of disability discrimination; (2) Employer had a legitimate, non-discriminatory and non-retaliatory reason for terminating Plaintiff, and Plaintiff could not establish pretext; (3) Plaintiff could not establish his complaints of discrimination were the motivating factor for his termination; and (4) there was no evidence of a causal connection between Plaintiff's work-related injury reports and his termination. This appeal followed.[3]

## II.     DISCUSSION

Plaintiff raises six points on appeal, all of which argue the trial court erred in granting Employer summary judgment on the claims in Plaintiff's petition. Plaintiff's first two points on appeal relate to his MHRA disability discrimination claim, his third and fourth points pertain to his MHRA hostile work environment claim, and his fifth and sixth points on appeal concern his MHRA retaliation and workers' compensation retaliation claims respectively.

**A.     General Standard of Review**

Our Court's review of a trial court's decision granting summary judgment is *de novo*. *B.B. v. Methodist Church of Shelbina, Missouri*, 541 S.W.3d 644, 650 (Mo. App. E.D. 2017). Summary judgment is only proper when the movant establishes there are no genuine issues as to

---

[3] To avoid unnecessary repetition, additional facts relevant to Plaintiff's points on appeal will be set forth in Sections II.B., II.C., II.D., and II.E. of this opinion.

the material facts and the movant is entitled to judgment as a matter of law. *Id.* "A genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Brockington v. New Horizons Enterprises, LLC*, 654 S.W.3d 876, 880 (Mo. banc 2022) (citation and internal quotations omitted). "A material fact in the context of summary judgment is one from which the right to judgment flows." *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (citation omitted). When determining whether a genuine issue of material fact exists, our Court must view the record in the light most favorable to the non-movant, accepting all reasonable inferences in favor of that party as true. *B.B.*, 541 S.W.3d at 650. Finally, "[s]ummary judgment is seldom appropriate in employment discrimination cases because such cases inherently require the resolution of factual disputes that turn on inferences, rather than direct evidence, of discriminatory animus." *Bram v. AT&T Mobility Services, LLC*, 564 S.W.3d 787, 794 (Mo. App. W.D. 2018) (citation omitted).

**B.      Plaintiff's Claim of Disability Discrimination in Violation of the MHRA**

Plaintiff's first two points on appeal argue the trial court erred in granting Employer summary judgment on Plaintiff's disability discrimination claim brought under the MHRA. For the reasons discussed below, we agree.

   **1.      General Law and the Trial Court's Basis for Granting Summary Judgment as to Plaintiff's Disability Discrimination Claim**

Under the MHRA, it is unlawful for an employer to discharge or otherwise discriminate against an individual because of the individual's disability. Section 213.055.1(1)(a). Missouri courts evaluate MHRA claims, including those for disability discrimination, using the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Eivins v. Missouri Department of Corrections*, 636 S.W.3d 155, 166 (Mo. App. W.D. 2021); *Gamber v. Missouri Dept. of Health and Senior Services*, 225 S.W.3d 470, 475 (Mo. App. W.D. 2007). Under this framework: (1) the plaintiff must establish a prima facie case

6

of discrimination; (2) if the plaintiff meets this burden, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its conduct; and (3) if the employer meets this burden, then the burden shifts back to the plaintiff to show that the employer's articulated reasons are pretextual. *Eivins*, 636 S.W.3d at 166-67; *Gamber*, 225 S.W.3d at 475-76. The Missouri legislature has stated that courts "shall consider the burden-shifting analysis . . . to be highly persuasive for analysis in cases not involving direct evidence of discrimination." Section 213.101.3; *Eivins*, 636 S.W.3d at 166.

In this case, the trial court granted summary judgment as to Plaintiff's claim of disability discrimination on two separate grounds: (1) Plaintiff could not claim he was legally disabled under the MHRA due to the application of judicial estoppel and therefore could not establish his prima facie case; and (2) Employer articulated a legitimate, nondiscriminatory reason for terminating Plaintiff, and Plaintiff could not establish Employer's reason was pretextual.

### 2. Plaintiff's Alleged Legal Disability as Required for a Prima Facie Case of Disability Discrimination

A prima facie case of disability discrimination under the MHRA – the initial step of the burden-shifting analysis – requires a plaintiff to show: (1) he is legally disabled; (2) he was discharged or otherwise subjected to an adverse employment action; and (3) the disability was the motivating factor[4] in the challenged employment action. *Folsom v. Missouri State Highway Patrol*, 580 S.W.3d 645, 650 (Mo. App. W.D. 2019); *see also* section 213.055.1(1)(a); section 213.010(2). Under the first element, a legal disability is defined in two parts: (1) an individual

---

[4] The parties agree this case arises under the amended version of the MHRA effective August 28, 2017. *See* section 213.055.1(1)(a); section 213.010(2). As such, the applicable standard is "motivating factor" rather than "contributing factor." *See id.*; section 213.101.4 (expressly abrogating the "contributing factor" standard); *cf. Clark v. AT&T Mobility Services, L.L.C.*, 623 S.W.3d 197, 203 (Mo. App. W.D. 2021) (holding the "contributing factor" standard applied under the pre-amended version of the MHRA). Accordingly, the "motivating factor" standard applies to all of Plaintiff's MHRA claims at issue in this appeal.

must have an impairment which substantially limits major life activity;[5] and (2) with or without a reasonable accommodation, that impairment must not interfere with the performance of the individual's job. *Folsom*, 580 S.W.3d at 650; *see also* section 213.010(5). Employer has made no argument on appeal or in the proceedings below regarding the second or third elements of Plaintiff's prima facie claim of disability discrimination. Accordingly, we need only address the trial court's application of judicial estoppel to preclude Plaintiff from claiming a legal disability and satisfying the first element of his prima facie case.

Judicial estoppel is an equitable doctrine available to courts to prevent litigants from making inconsistent claims in separate proceedings. *McKinney v. Mercy Hospital St. Louis*, 604 S.W.3d 680, 690 (Mo. App. E.D. 2020). Courts invoke judicial estoppel to protect the integrity of judicial proceedings and "to prevent parties from playing fast and loose with the judicial process." *Vacca v. Missouri Department of Labor and Industrial Relations*, 575 S.W.3d 223, 225 (Mo. banc 2019). There is no fixed set of elements which guides the application of judicial estoppel beyond the requirement that a party must take "truly inconsistent positions" in separate legal proceedings.[6,7] *Id*. at 235; *McKinney*, 604 S.W.3d at 690. This Court reviews a trial court's application of judicial estoppel to the facts of a case for an abuse of discretion. *Vacca*, 575 S.W.3d at 230. A trial court can abuse its discretion by committing legal errors, inaccurately resolving factual issues, or applying incorrect legal principles. *LaBranche v. Kansas City Public Schools*, 671 S.W.3d 801, 807 (Mo. App. W.D. 2023).

---

[5] The parties do not dispute on appeal whether Plaintiff's PTSD qualifies as an impairment which substantially limits major life activity. *See Folsom*, 580 S.W.3d at 650; *see also* section 213.010(5).

[6] The inconsistent statements at issue in a particular case could be made "under oath in a judicial proceeding, [] under penalty of perjury in an administrative filing, or in pleadings filed with a prior administrative proceeding." *Vacca*, 575 S.W.3d at 236.

[7] Beyond the "inflexible prerequisite" that a party must take "truly inconsistent positions," courts also consider additional factors including whether the party succeeded in convincing a court to accept its earlier position and whether the party seeking to assert the inconsistent position would gain an unfair advantage. *Vacca*, 575 S.W.3d at 232-33, 235 (citation omitted); *McKinney*, 604 S.W.3d at 690. These additional factors are unnecessary to reach where a party's positions are held to be consistent. *See id*.

In this case, Plaintiff applied for Social Security Disability benefits in March 2018 ("SSD Application").[8]  The trial court found Plaintiff took a position in his SSD Application that was "clearly inconsistent" with the position he took in the underlying lawsuit, and thus judicial estoppel applied and precluded Plaintiff from claiming a legal disability in his case.  Specifically, the court found that claims made by Plaintiff in his SSD Application which indicated his alleged disability "prevented him from working under any circumstances" were contradictory to his assertion in the underlying lawsuit "that he could perform his work duties for [Employer] with or without an accommodation."

This Court previously addressed a similar situation in *McKinney*, 604 S.W.3d 680.  Much like Employer's argument in this case, the employer in *McKinney* argued that judicial estoppel should apply because the plaintiff's claim in her Social Security Disability application that she could not work was inconsistent with a disability discrimination claim which required her to be able to work, with or without a reasonable accommodation.  *Id.* at 688, 690-92.  Importantly, our Court held that "claims for [Social Security Disability] and disability discrimination claims 'can comfortably exist side by side'" and are not "truly inconsistent."  *Id.* at 692 (partially quoting *Vacca*, 575 S.W.3d at 234 (quoting *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 802-03 (1999))).  The *McKinney* Court reasoned that these two claims are not inconsistent with each other because the term "disability" has different meanings in different contexts, including, for example, the fact that a Social Security Disability claim does not consider whether the employee could continue working with a reasonable accommodation.  604 S.W.3d at 692.  Ultimately, this Court declined to apply judicial estoppel to the plaintiff's claims.  *Id.* at 694.

---

[8] Plaintiff had previously applied for Social Security Disability benefits in July 2017.  However, the record indicates that the statements at issue in this case were made in Plaintiff's later application for benefits in March 2018.  For the sake of clarity, this opinion refers only to Plaintiff's March 2018 SSD Application.

In this case, as in *McKinney*, Plaintiff's SSD Application and disability discrimination claim are not "truly inconsistent." *See id*. at 692. This is true because Plaintiff's SSD Application did not account for his ability to continue working for Employer with his service dog as an accommodation. *See id*.; *see also Cleveland*, 526 U.S. at 803 (discussing how an application for Social Security Disability does not account for or require any reference to the possibility of a reasonable accommodation). Employer appears to partially concede this argument on appeal, agreeing "that situations may exist where an individual could apply for, and receive, [Social Security Disability] benefits while being able to continue working with an accommodation." However, Employer argues the nature of the specific statements made by Plaintiff in his SSD Application compel the conclusion that Plaintiff could not have performed his work duties for Employer, with or without a reasonable accommodation. Employer specifically points to Plaintiff's statements that his PTSD and anxiety made it "impossible to be around people," "impossible to do any kind of work," and "completely destroyed [his] ability to function in any work environment."

Plaintiff cannot ignore an apparent contradiction between the claims in his SSD Application and the underlying lawsuit, but must proffer a sufficient explanation for the alleged discrepancies. *See Cleveland*, 526 U.S. at 806; *Vacca*, 575 S.W.3d at 234-35; *McKinney*, 604 S.W.3d at 692. We find Plaintiff has proffered a sufficient explanation for the alleged discrepancies between his claims. *See id*. Plaintiff filed his SSD Application over two months after he was suspended by Employer and over a month after he was officially terminated. Plaintiff argues the statements in his SSD Application reflected his abilities and limitations as of March 2018, "after his condition had significantly worsened" due to the distress of his suspension in December 2017 and ultimate termination by Employer in February 2018. (emphasis omitted). We find Plaintiff's explanations sufficient to warrant a reasonable juror to

10

conclude, assuming the truth of, or Plaintiff's good faith belief in, the statements from his SSD Application, he could nonetheless have performed his job with Employer with an accommodation at the time of his termination. *See Cleveland*, 526 U.S. at 806-07; *see also McKinney*, 604 S.W.3d at 692-93 (finding the plaintiff's explanation of allegedly contradictory statements adequate when the plaintiff argued, *inter alia*, that her condition worsened after the loss of her job). Pursuant to the reasoning in *McKinney*, we find Plaintiff's statements in his SSD Application were not "truly inconsistent" with his disability discrimination claim and therefore judicial estoppel does not apply.[9] *See Vacca*, 575 S.W.3d at 235; *McKinney*, 604 S.W.3d at 690.

Nevertheless, Employer argues judicial estoppel should apply under the reasoning of the Missouri Supreme Court's decision in *Vacca*. 575 S.W.3d 223. In *Vacca*, the plaintiff filed an amended petition in his marriage dissolution proceeding stating he was "permanently and completely disabled and . . . no longer capable of being employed," testifying under oath that he could not sustain any type of employment. *Id*. at 228. Based on these claims by the plaintiff, the judge in the dissolution action eventually awarded him $1,200 per month in maintenance. *Id*. at 229, 237. A few months after his testimony in the dissolution action, the plaintiff filed a disability discrimination lawsuit against his employer in which he argued he was able to perform his job as an Administrative Law Judge ("ALJ") with a reasonable accommodation. *Id*. at 225,

---

[9] Employer argues judicial estoppel is necessary in this case in part because the statements from Plaintiff's SSD Application are "retroactive to June 2017" based on Plaintiff's claim in the application that he became "unable to work" as of June 2017. Employer argues Plaintiff effectively stated in his SSD Application "that he could not work under any circumstances at the time of his termination" in February 2018 because his statements regarding his inability to work were effective as of June 2017, not as of March 2018 when he actually made the statements at issue. (emphasis omitted). However, Plaintiff's SSD Application made clear that he continued to work for Employer beyond the June 2017 date until his employment ended in February 2018 and contained numerous references to his service dog accommodation. Moreover, the only explanation supported by the record as to why Plaintiff chose the June 2017 date was that Counselor advised Plaintiff she believed "he was disabled from working" around that approximate date due to his PTSD causing frequent absences from work. We hold that judicial estoppel does not apply under these factual circumstances. *See McKinney*, 604 S.W.3d at 685-86, 690-94 (holding that judicial estoppel did not apply where, *inter alia*, the plaintiff stated she was unable to work due to her disabling condition as of a date several months prior to her termination).

11

229. The Court held that judicial estoppel applied to preclude the plaintiff from claiming he could have worked as an ALJ with a reasonable accommodation due to his earlier conflicting statements in the dissolution action. *Id.* at 236-38.

We find the circumstances in *Vacca* distinguishable from the facts of this case. The plaintiff in *Vacca* was awarded substantial maintenance based on his representation that he could not work at all, regardless of any reasonable accommodation. *Id.* at 228-29, 237. As discussed above, Plaintiff's SSD Application in this case did not account for his ability to work *with* a reasonable accommodation. *See Cleveland*, 526 U.S. at 803; *McKinney*, 604 S.W.3d at 692. As a result, Plaintiff's disability discrimination lawsuit claiming he could perform his job *with* a reasonable accommodation is consistent with a Social Security Disability claim that he could not work *without* it. *See id.* Additionally, the *Vacca* Court found it "particularly concerning" that the plaintiff in that case was highly sophisticated, knowledgeable, and intimately familiar with disability law due to his extensive career as an ALJ. 575 S.W.3d at 238. In contrast, the record in this case indicates Plaintiff had no background familiarity with disability law and required help from others when completing the necessary forms and other written materials required for his SSD application. *See McKinney*, 604 S.W.3d at 693 (similarly finding). Finally, the Court in *Vacca* noted that the plaintiff could not successfully reconcile his inconsistent statements, and an amendment to one of his claims after facing a judicial estoppel challenge "represented yet an additional attempt to play fast and loose with the legal system." 575 S.W.3d at 237-38. Such circumstances do not present themselves in this case, where Plaintiff has put forth plausible explanations for the alleged inconsistencies in his claims and the record gives no indication he is attempting to offend the integrity of the judicial process. *See id.* at 232.

Based on the foregoing, the trial court erred in applying judicial estoppel to preclude Plaintiff from claiming he had a legal disability under the MHRA.

### 3. Analysis as to Employer's Legitimate, Nondiscriminatory Reason for Plaintiff's Termination and Whether Plaintiff Could Establish Pretext

As discussed above, Plaintiff successfully established a prima facie case of disability discrimination, satisfying the first step in the burden-shifting analysis.[10] *See Eivins*, 636 S.W.3d at 166-67; *Gamber*, 225 S.W.3d at 475-76. In the next step of the analysis, the burden shifts to Employer to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *See id*. Plaintiff was terminated by Employer on February 16, 2018, and he received a termination letter on that date which cited his conduct during the December 2017 incident in violation of Employer's "Workplace Conduct and Behavior Practice" as the reason for his termination. Employer never stated any other reason for Plaintiff's termination beyond his violation of company policy as stated in the termination letter. Violation of Employer's workplace conduct policy constitutes a legitimate, nondiscriminatory reason for Plaintiff's termination. *See Ashby v. Woodridge of Missouri, Inc.*, 673 S.W.3d 537, 549 (Mo. App. S.D. 2023); *Medley v. Valentine Radford Communications, Inc.*, 173 S.W.3d 315, 325 (Mo. App. W.D. 2005).

Because Employer provided a legitimate, nondiscriminatory reason for Plaintiff's termination, we move to the final step of the burden-shifting analysis which shifts the burden back to Plaintiff to show that Employer's articulated reason for his termination was pretextual. *See Eivins*, 636 S.W.3d at 166-67; *Gamber*, 225 S.W.3d at 475-76. We find the Western District's opinion in *Eivins* instructive to this step of the analysis. 636 S.W.3d 155. In *Eivins*, the Court conducted a burden-shifting analysis which considered, *inter alia*, the details of the defendant-employer's purported reasons for its allegedly discriminatory action and the plaintiff's rebuttal thereto. *Id*. at 166-78. The Court noted in its analysis that the plaintiff denied most of the employer's alleged uncontroverted facts and successfully rebutted the employer's purported

---

[10] *See* Section II.B.2. of this opinion.

13

reasons for their alleged discriminatory behavior with additional undisputed evidence. *Id*. at 172-73, 176-77. The *Eivins* Court ultimately held that the trial court erred in granting summary judgment on the plaintiff's MHRA discrimination claim because material facts were in dispute as to whether the employer's articulated reasons for its alleged discriminatory acts constituted legitimate, nondiscriminatory justifications. *Id*. at 178.

In this case, Plaintiff denied many of the facts underlying the December 2017 incident cited as the sole justification for Plaintiff's termination. Plaintiff admitted that he drove behind Supervisor on his commute into work the morning of the December 2017 incident and eventually pulled into the gas station. However, beyond these facts, Plaintiff essentially denies the entirety of the version of events as alleged by Supervisor. Plaintiff also filed a statement of additional uncontroverted facts and supporting materials in response to Employer's motion for summary judgment. In his filing, Plaintiff alleged multiple facts detailing his version of the December 2017 incident, many of which were admitted by Employer.[11]

In sum, the only reason cited by Employer for Plaintiff's termination was the December 2017 incident involving Plaintiff and Supervisor. However, the vast majority of the details regarding what transpired on that day and led directly to Plaintiff's eventual termination are disputed by the parties. The credibility of Employer's explanation for Plaintiff's termination is material in a discrimination case. *See Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 483 (Mo. App. E.D. 2007) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)). Whether Employer had a legitimate, nondiscriminatory reason for terminating Plaintiff

---

[11] Employer responded to numerous paragraphs in Plaintiff's statement of additional material facts by denying the facts as "immaterial" without any specific references to supporting documentation in the summary judgment record. Failure to support each denial in a statement of facts with specific references to discovery, exhibits, or affidavits constitutes an admission of the truth of that numbered paragraph. *Eivins*, 636 S.W.3d at 175-76; *see also* Missouri Supreme Court Rule 74.04(c)(2)-(3) (effective from July 1, 2008, to the present). Accordingly, Employer's purported denials of the paragraphs in Plaintiff's statement of additional material facts as "immaterial" constitute admissions. *See id*.

14

or whether the proffered reason was pretextual ultimately comes down to the credibility of two different versions of the same events, and "[i]t is not appropriate for this Court to make credibility determinations on summary judgment." *See Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 578 (Mo. banc 2006). Accordingly, because material facts remain in dispute as to whether Employer has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff or whether Employer's reason was pretextual, the trial court erred in granting summary judgment in Employer's favor on Plaintiff's disability discrimination claim. *See Eivins*, 636 S.W.3d at 178 (similarly holding); *see also Smith v. Aquila, Inc.*, 229 S.W.3d 106, 124 (Mo. App. W.D. 2007).

### 4. Conclusion as to Plaintiff's Disability Discrimination Claim

Based on the foregoing, the trial court erred in granting summary judgment in Employer's favor under the circumstances of this case. Points one and two on appeal are granted.

### C. Plaintiff's Claim of a Hostile Work Environment in Violation of the MHRA

Plaintiff's third and fourth points on appeal argue the trial court erred in granting summary judgment on his hostile work environment claim. For the reasons discussed below, we agree.

### 1. General Law, the Trial Court's Basis for Granting Summary Judgment as to Plaintiff's Hostile Work Environment Claim, and Employer's Arguments on Appeal

"A successful claim of a hostile work environment requires the plaintiff to show: (1) he is a member of a group protected under the MHRA; (2) he was subjected to unwelcome harassment; (3) the plaintiff's membership in the protected group was a motivating factor in the harassment; and (4) a term, condition, or privilege of the plaintiff's employment was affected by the harassment." *Eivins*, 636 S.W.3d at 179.

15

In this case, the trial court granted summary judgment as to Plaintiff's hostile work environment claim because the court found Plaintiff could not establish he was a member of a protected group under the MHRA. In so finding, the trial court applied judicial estoppel to Plaintiff's hostile work environment claim in the same manner as was addressed in Section II.B.2. of this opinion, and accordingly we find the trial court erred in doing so. However, Employer has argued both on appeal and in the proceedings below that Plaintiff also cannot establish the fourth element of his hostile work environment claim, i.e., whether Plaintiff's allegations of harassment affected a term, condition, or privilege of Plaintiff's employment. *See id*.

A plaintiff demonstrates that unwelcome harassment affected a term, condition, or privilege of his employment by showing either: (1) a tangible employment action, i.e., a significant change in employment status; or (2) an abusive working environment. *Id*. The burden of showing a tangible employment action is met when the alleged harassment led to, for example, termination of employment. *See Hill v. Ford Motor Co.*, 277 S.W.3d 659, 667 (Mo. banc 2009).

As to an allegation of an abusive working environment, this is shown when a plaintiff demonstrates that the discriminatory harassment is sufficiently severe or pervasive enough to alter the conditions of his employment. *McGaughy v. Laclede Gas Company*, 604 S.W.3d 730, 748 (Mo. App. E.D. 2020). The harassment must be severe or pervasive when viewed subjectively by the plaintiff and when viewed objectively by a reasonable person. *Fuchs v. Department of Revenue*, 447 S.W.3d 727, 734 (Mo. App. W.D. 2014). After evidence of improper conduct and subjective offense is introduced, the determination of whether alleged discriminatory conduct rose to the level of being abusive is largely up to the jury. *Eivins*, 636 S.W.3d at 179. Summary judgment is rarely appropriate in discrimination cases that turn on

16

whether an employer's conduct is objectively severe or pervasive. *Fuchs*, 447 S.W.3d at 734 (citing *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007) (abrogated on other grounds)). Further, most claims of a hostile work environment involve day-to-day discriminatory acts that are not individually significant, but instead significant in their cumulative effect. *McGaughy*, 604 S.W.3d at 748. When assessing an allegedly abusive work environment, we look to the totality of the circumstances. *Id.*

### 2. Analysis and Conclusion as to Plaintiff's Hostile Work Environment Claim

Plaintiff argues there are genuine issues of material fact in this case as to whether a term, condition, or privilege of his employment was affected by the alleged harassment. We agree. As discussed above,[12] the material facts surrounding the alleged incident which led to Plaintiff's termination are disputed by the parties. A jury could conclude that the alleged harassment Plaintiff suffered led to his eventual termination, which constitutes a tangible employment action sufficient to establish the fourth element of his hostile work environment claim. *See Hill*, 277 S.W.3d at 667. Notably, Employer makes no argument on appeal regarding whether Plaintiff suffered a tangible employment action, and instead focuses entirely on whether the alleged harassment was severe or pervasive enough to create an abusive working environment.

We also find there is a genuine issue of material fact as to whether the harassment alleged by Plaintiff created an abusive working environment in this case. Plaintiff's statement of additional material facts and supporting materials, filed in response to Employer's motion for summary judgment, alleged the following uncontroverted facts: Supervisor told Plaintiff "he was not disabled" and that "having a service dog was a joke"; Supervisor told Plaintiff "nobody was going to tell her what to do with her employee"; Supervisor assigned another employee to a work task that Employer and Plaintiff's labor union agreed was suitable for him to complete while

---

[12] *See* Section II.B.3. of this opinion.

having his service dog with him; Supervisor excluded Plaintiff from celebratory free lunches periodically provided by Employer, and when Plaintiff asked for a reason, Supervisor responded, "dog hair"; Supervisor told Plaintiff she was going to find a way to fire him, it was "just a matter of time" before she did so, and that he was "on his last days"; Supervisor refused to allow Plaintiff to leave work for scheduled medical appointments on multiple occasions; and Supervisor continually referred to Plaintiff as "Fluffy" in an apparent reference to his service dog, persisting even after Plaintiff asked her to stop.

"Harassment includes discriminatory intimidation, ridicule, and insult." *Fuchs*, 447 S.W.3d at 733 (citation and internal quotations omitted). Additionally, acts by supervisors have greater power to create a hostile work environment when compared to acts of other coworkers. *M.W. by and though K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 413 (Mo. App. E.D. 2020) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998)). Under the totality of the circumstances in this case, Plaintiff has sufficiently alleged that he subjectively viewed Employer's conduct as severe and pervasive. *See Fuchs*, 447 S.W.3d at 734; *McGaughy*, 604 S.W.3d at 748, 750-51. Additionally, viewing the facts in the light most favorable to Plaintiff, we find there is a genuine issue of material fact regarding whether Employer's conduct was objectively severe or pervasive as to create an abusive working environment. *See Fuchs*, 447 S.W.3d at 734-35. Accordingly, under the circumstances of this case, the trial court erred in granting summary judgment in Employer's favor on Plaintiff's hostile work environment claim under the MHRA. Points three and four are granted.

D.     **Plaintiff's Claim of Retaliation in Violation of the MHRA**

Plaintiff's fifth point on appeal argues the trial court erred in granting summary judgment on his retaliation claim under the MHRA. For the reasons discussed below, we disagree.

18

1.      **General Law**

A prima facie case of retaliation requires a plaintiff to show: (1) he complained of discrimination; (2) his employer took adverse action against him; and (3) a causal relationship between the discrimination complaint and the adverse employment action. *McGaughy*, 604 S.W.3d at 751; *see also Eivins*, 636 S.W.3d at 180. Because the parties do not dispute the existence of the first two elements, only the third element of causation is at issue.

2.      **Analysis and Conclusion as to Plaintiff's MHRA Retaliation Claim**

In this case, Plaintiff contends he was terminated by Employer in retaliation for complaints of discriminatory harassment. The record shows Plaintiff made verbal complaints of harassment to Employer's human resources representative ("HR Representative").[13] However, the ultimate decision to terminate Plaintiff's employment was made by Employer's President, and HR Representative was not involved in the decision. Employer's President, in a sworn affidavit, stated she was not aware of Plaintiff's complaints to HR Representative at the time the decision was made to terminate Plaintiff's employment. Plaintiff has not established a causal connection between his complaints of discrimination and his termination because he has failed to put forth any evidence that Employer's President, who made the decision to terminate Plaintiff's employment, knew about his earlier complaints of discrimination. *See Moore v. Southwestern Bell Telephone Company*, 684 S.W.3d 187, 202 (Mo. App. E.D. 2023) (similarly holding). Further, we find nothing in the record to indicate Plaintiff's termination was causally connected to any of his complaints of discrimination. Because Plaintiff has failed to produce evidence of a causal connection between his complaints of discrimination and his termination, Employer was

---

[13] On appeal, Plaintiff also claims he complained about harassment to co-workers. However, these facts are not part of the summary judgment record. *See Loerch v. City of Union Missouri*, 643 S.W.3d 597, 602 (Mo. App. E.D. 2022) (citing *Green*, 606 S.W.3d at 116 n.5). Even assuming *arguendo* that Plaintiff did make these additional complaints, he has still failed to causally connect any of his complaints to his eventual termination. *See Moore v. Southwestern Bell Telephone Company*, 684 S.W.3d 187, 202 (Mo. App. E.D. 2023).

entitled to judgment as a matter of law on Plaintiff's MHRA retaliation claim.[14] *See id*. at 204

(similarly holding).  Point five is denied.

### E.  Plaintiff's Workers' Compensation Retaliation Claim

In his sixth and final point on appeal, Plaintiff argues the trial court erred in granting

summary judgment on his workers' compensation retaliation claim under section 287.780.  For

the reasons discussed below, we disagree.

#### 1.  General Law and the Issue on Appeal

Section 287.780 provides that:

> No employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer. For purposes of this section, 'motivating factor' shall mean that the employee's exercise of his or her rights under this chapter actually played a role in the discharge or discrimination and had a determinative influence on the discharge or discrimination.

*Id*. (emphasis omitted).  To survive summary judgment on a workers' compensation retaliation

claim, a plaintiff must offer evidence that his exercise of rights under section 287.780 was the

motivating factor for his termination from his employer, i.e., that his reports of workplace

injuries had a determinative influence on his termination.  *See id*.; *Ashby*, 673 S.W.3d at 547.

In this case, it is undisputed that Plaintiff's notifications to Employer of two separate

work-related injuries were sufficient to constitute an exercise of workers' compensation rights

under Chapter 287.  *See Demi v. Sheehan Pipeline Construction*, 452 S.W.3d 211, 216-17 (Mo.

---

[14] Plaintiff's MHRA retaliation claim in his petition also argued Employer canceled Plaintiff's scheduled hand surgery in retaliation to Plaintiff filing a charge of discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission.  The trial court rejected this argument in its grant of summary judgment in Employer's favor on Plaintiff's MHRA retaliation claim.  However, Plaintiff's point on appeal addressing his MHRA retaliation claim argues only that he was terminated in retaliation for complaints of discrimination, and thus any claim of error related to the cancelation of Plaintiff's hand surgery in retaliation for the discrimination charges he filed is deemed abandoned.  *See* Missouri Supreme Court Rule 84.13(a) (effective from July 1, 2012, to the present); *Lynch v. Treasurer of State*, 635 S.W.3d 573, 581 n.5 (Mo. App. E.D. 2021).

App. E.D. 2014). However, the parties disagree as to whether Plaintiff demonstrated that the exercise of his rights was the motivating factor for his termination.

      2.      **Analysis and Conclusion as to Plaintiff's Workers' Compensation Retaliation Claim**

Plaintiff argues the exercise of his workers' compensation rights was the motivating factor for his termination because his notifications to Employer regarding his work-related injuries occurred prior to his termination, and one of them was in close proximity to his suspension and termination. While the proximity in time between a plaintiff's exercise of workers' compensation rights and his termination is to be considered when assessing the motivating factor for the termination, "timing alone cannot conclusively establish that an employee was discharged for exercising [his] rights under the [Workers' Compensation] Act." *St. Lawrence v. Trans World Airlines, Inc.*, 8 S.W.3d 143, 150 (Mo. App. E.D. 1999); *Coleman v. Winning*, 967 S.W.2d 644, 648 (Mo. App. E.D. 1998); section 287.780. Plaintiff initially provided notice to Employer of an injury to his shoulder in March 2017, nearly a year before his February 2018 termination. Plaintiff subsequently notified Employer of a second injury to his wrists and hands in December 2017. The timing of Plaintiff's termination alone does not support the conclusion that the exercise of his workers' compensation rights was the motivating factor in his termination, particularly when Plaintiff has put forth no additional evidence in support of a retaliatory motive. *See St. Lawrence*, 8 S.W.3d at 150; section 287.780; *cf. Wey v. Dyno Nobel, Inc.*, 81 S.W.3d 208, 210-211 (Mo. App. S.D. 2002) (reversing a grant of summary judgment where the record contained evidence of statements by a supervisor indicating a retaliatory motive related to a workers' compensation claim). Further, Plaintiff's initial report of his shoulder injury in March 2017 is too temporally distant from his termination in February 2018 to support a finding that it was the motivating factor for his termination. *See E.E.O.C. v. Product*

21

*Fabricators, Inc.*, 763 F.3d 963, 973 (8th Cir. 2014); *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005).

Based on the foregoing, Plaintiff has failed to produce evidence demonstrating that the exercise of his workers' compensation rights was the motivating factor for his termination. *See* section 287.780. Accordingly, Employer was entitled to judgment as a matter of law on Plaintiff's workers' compensation retaliation claim. *See Ashby*, 673 S.W.3d at 546-48. Point six is denied.

## III. CONCLUSION

The portions of the trial court's judgment granting Employer summary judgment on Plaintiff's MHRA retaliation and workers' compensation retaliation claims are affirmed. The portions of the trial court's judgment granting Employer summary judgment on Plaintiff's disability discrimination and hostile work environment claims under the MHRA are reversed, and we remand the cause for further proceedings consistent with this opinion.

_____
ROBERT M. CLAYTON III, Presiding Judge

Philip M. Hess, J., concurs,
Cristian M. Stevens, J., dissents in a separate opinion.



# In the Missouri Court of Appeals

# Eastern District

JAMES RAYMOND KING, ) No. ED111783
)
    Appellant, ) Appeal from the Circuit Court
) of St. Louis County
) 19SL-CC00423
vs. )
)
)
MISSOURI AMERICAN WATER CO., ) Honorable Joseph L. Walsh III
)
    Respondent. ) Filed: June 4, 2024

## DISSENTING OPINION

I respectfully dissent from the majority's resolution of Plaintiff's first two points on appeal. Regarding the first point, I dissent from the majority's reversal of the circuit court's application of judicial estoppel and grant of summary judgment on Plaintiff's MHRA disability discrimination claim. Because Plaintiff thus cannot prove a *prima facie* case of disability discrimination, I also dissent from the majority's reversal of the circuit court's grant of summary judgment in Plaintiff's second point on appeal.

Plaintiff's representations, on the one hand, that he was totally disabled for the purpose of Social Security disability benefits and, on the other hand, that his disability does not interfere with his ability to do his job for the purpose of his MHRA claim are clearly inconsistent and Plaintiff fails to reconcile these inconsistencies. Accordingly, I do not agree that the circuit court

1

abused its discretion in applying judicial estoppel to Plaintiff's claim of disability discrimination. Employer therefore is entitled to judgment as a matter of law, and the circuit court did not err in granting summary judgment on Plaintiff's disability discrimination claim.

Standard of Review

While a circuit court's grant of summary judgment is reviewed *de novo*, judicial estoppel is a discretionary "flexible, equitable doctrine," the application of which is reviewed for abuse of discretion. *Vacca v. Mo. Dep't of Lab. & Indus. Rel.*, 575 S.W.3d 223, 230, 235 (Mo. banc 2019). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 125 (Mo. banc 2023) (citation omitted).

Factual Background

According to the uncontroverted summary judgment record, Plaintiff submitted, under penalty of perjury, two applications for Social Security disability benefits. He submitted the first application in July 2017 and the second in March 2018. In both applications, Plaintiff represented: "I became unable to work because of my disabling condition on June 19, 2017. I am still disabled."

Employer suspended Plaintiff on December 26, 2017, and terminated his employment on February 16, 2018.

One month later, in his March 2018 application for Social Security disability benefits, Plaintiff persisted in identifying the date on which he became unable to work as June 19, 2017. Plaintiff reported that he stopped working because of the following conditions: Post Traumatic

2

Stress Disorder (PTSD), right shoulder problems, degenerative disc disease, breathing problems, tinnitus, hearing loss, and knee problems. He represented:

> Due to my PTSD and anxiety attacks it's impossible for me to be around people . . . . my chronic pain keeps me from standing, walking, or lifting for periods of time along with . . . migraine head aches [sic]. . . my physical injuries, that have steadily gotten worse over the past few years make[] [it] impossible to do any kind of work  . . . my emotional numbness . . . completely destroyed my ability to function in any work environment. I hurt every day, mak[ing] it impossible to function.

Plaintiff also represented that he is "unable to concentrate or use my hands with out [sic] extreme difficulties, I find it impossible to attend any functions with people, my mind will not let me . . . function in any meaningful capacity." Plaintiff reported that he can walk only "50-100 yds maybe" before needing to rest for 10 to 15 minutes, requires at least two naps a day lasting one to two hours each, and cannot drive in big cities or in a lot of traffic.

In July 2018, the Social Security Administration issued a Notice of Award finding Plaintiff became disabled on June 19, 2017, the same date identified by Plaintiff as the date he became unable to work. The Notice advised Plaintiff he was entitled to monthly disability benefits as of December 2017. Plaintiff received Social Security disability payments from December 2017 to at least September 22, 2020, the date on which he was deposed and confirmed his receipt of benefits.

In his Petition before the circuit court, filed on February 1, 2019, Plaintiff brought a disability discrimination claim pursuant to the MHRA, in which he identified his disability as PTSD. He alleged, as an element of his disability discrimination claim, that PTSD is a "disability" as defined in Section 213.010, "in that it is a mental impairment that substantially limits one or more of Plaintiff's major life activities, including but not limited to Plaintiff's abilities to concentrate, sleep, eat, socialize, and handle stress." More comprehensively, Section

3

213.010 defines "disability" as "a physical or mental impairment which substantially limits one or more of a person's major life activities . . ., which with or without reasonable accommodation *does not interfere with performing the job . . ..*" RSMo §213.010(5) (emphasis added).

Plaintiff further alleged in his Petition that, in or about April 2016, he "obtained a service dog due to his condition of PTSD." According to the summary judgment record, Plaintiff was seeing a counselor for his PTSD, and the counselor "recommended that plaintiff get a service dog to assist him in coping with some of the PTSD symptoms, including panic attacks and anxiety."

On this record, the circuit court determined that Plaintiff's disability discrimination claim failed as a matter of law because Plaintiff previously admitted under oath when seeking Social Security disability benefits that he was not disabled as defined by the MHRA. The court found that, in his Social Security disability applications, "Plaintiff attested under penalty of perjury that his disabilities prevented him from working under any circumstances," while in his MHRA lawsuit, "Plaintiff directly contradicts these previous statements made under oath to the Social Security Administration . . . and now asserts that he could perform his work duties for Defendant with or without accommodation." The court concluded, pursuant to the Missouri Supreme Court's decision in *Vacca*, 575 S.W.3d 223, that Plaintiff was judicially estopped from making this new, conflicting argument in his lawsuit.

Applying the factors set forth in *Vacca*, the circuit court determined that Plaintiff took a position in his applications for Social Security disability benefits that is "clearly inconsistent" with the position he took in his MHRA lawsuit, and, as a result, Plaintiff succeeded in persuading the Social Security Administration to accept his claim of total disability. The court concluded that Plaintiff would have derived an unfair advantage at trial unless he was estopped

4

from asserting his "two diametrically opposing positions." In its discretion, the trial court applied judicial estoppel, meaning Plaintiff could not make a *prima facie* case that he was disabled as defined by the MHRA, and Employer was entitled to summary judgment on Plaintiff's claim of disability discrimination.

## Discussion

As the majority recognizes, judicial estoppel is an equitable doctrine aimed at preventing litigants from making inconsistent claims in separate proceedings. *McKinney v. Mercy Hosp. St. Louis*, 604 S.W.3d 680, 690 (Mo. App. E.D. 2020). There is no fixed set of elements that must be present to apply judicial estoppel, beyond the requirement that a party must take "truly inconsistent positions" in separate legal proceedings. *McKinney*, 604 S.W.3d at 690; *see also Vacca*, 575 S.W.3d at 232 ("First, a party's later position must be 'clearly inconsistent' with its earlier position."). Aside from that prerequisite, courts regularly inquire whether the party successfully convinced a court or administrative body in an earlier proceeding to accept the inconsistent position. *Vacca*, 575 S.W.3d at 233, 236-37; *McKinney*, 604 S.W.3d at 690.

### *Truly Inconsistent Positions*

To determine whether a party has taken truly inconsistent positions, we must look to the specific factual claims made by the party. *Vacca*, 575 S.W.3d at 235; *McKinney*, 604 S.W.3d at 692. While claims for Social Security disability benefits and disability discrimination claims can comfortably co-exist, the party bringing those claims cannot ignore an apparent contradiction between his claims and must proffer a sufficient explanation for any alleged discrepancy. *Vacca*, 575 S.W.3d at 234-35; *McKinney*, 604 S.W.3d at 692.

The majority concludes that Plaintiff's representations in his Social Security disability applications and the claims in his Petition are not truly inconsistent, and that Plaintiff has

5

proffered a sufficient explanation for any discrepancies. The majority reasons that the definitions of "disability" for Social Security disability benefits and the MHRA differ in that a Social Security disability application is not required to reference the possibility of a reasonable accommodation, and Plaintiff's application for Social Security disability benefits "did not account for his ability to continue working for Employer with his service dog as an accommodation." The majority also credits Plaintiff's explanation that his representations to the Social Security Administration occurred a month or two after Plaintiff was suspended and terminated and those representations reflected his abilities and limitations as of March 2018, after his condition had significantly worsened.

I differ with the majority in that Plaintiff's expressions of total disability in his applications for Social Security disability benefits could hardly have been more categorical: Plaintiff's PTSD and anxiety attacks make being around people "impossible;" his physical injuries make "any kind of work . . . impossible;" his emotional numbness "completely destroyed" his ability to function in "any work environment;" he hurts every day, which makes it "impossible to function;" he finds it "impossible" to attend "any function with people;" and he cannot function in "any meaningful capacity." These unconditional representations leave no room for the *post hoc* rationalization that what Plaintiff really said is that doing "any kind of work" was "impossible," his ability to function in "any work environment" was "completely destroyed," and he cannot function in "any meaningful capacity," *except with a service dog*. In fact, Plaintiff had been accommodated with a service dog since April 2016, more than a year before he submitted his Social Security disability applications attesting to the "impossibility" of doing "any kind of work" in "any work environment."

6

Further, the record is clear that the purpose of Plaintiff's obtaining a service dog was to accommodate his PTSD. Many of the conditions Plaintiff identified in his Social Security disability applications as the conditions that caused him to stop working, like right shoulder problems, degenerative disc disease, breathing problems, tinnitus, hearing loss, knee problems, chronic pain, and physical injuries, are not accommodated by a service dog. Therefore, the distinction between the applications for Social Security disability benefits, which do not account for accommodations, and the MHRA claim, which does, is a distinction without a difference in this case.

Looking, as we must, to the specific factual claims made by Plaintiff, *see Vacca*, 575 S.W.3d at 235; *McKinney*, 604 S.W.3d at 692, we can conclude only that Plaintiff's claims are truly inconsistent.

For similar reasons, Plaintiff's proffered explanation for his inconsistent claims is confounded by the undisputed record. Plaintiff maintains that he made the relevant representations to the Social Security Administration in March 2018, a month or two after he was suspended in December 2017 and terminated in February 2018. Therefore, Plaintiff argues, his representations reflected his abilities and limitations as of only March 2018, after his suspension and termination exacerbated his condition.

The record demonstrates that Plaintiff filed his first Social Security disability application in July 2017, months before his suspension and termination. He filed his second application in March 2018, one month after his termination. Both applications, before and after his suspension and termination, identified the date on which he became unable to work as June 19, 2017, months before the suspension and termination.

Further, Plaintiff's March 2018 application identified disabilities other than PTSD: right shoulder problems, degenerative disc disease, breathing problems, tinnitus, hearing loss, and knee problems, not to mention chronic pain that keeps Plaintiff from standing, walking, or lifting; physical injuries making it impossible for Plaintiff to do any kind of work; and Plaintiff's inability to walk more than 50 to 100 yards without resting for 10 to 15 minutes. Plaintiff does not argue, and the record does not suggest, that those physical conditions somehow were aggravated by Plaintiff's suspension and termination. Indeed, Plaintiff made no mention in his March 2018 application of his conditions having worsened in the one month since his termination. Instead, Plaintiff identified the time frame during which his physical injuries "have steadily gotten worse" as "the past few years," not the single month that had elapsed since his termination. Thus, the inconsistencies in Plaintiff's representations in his Social Security disability applications and his claims in his Petition cannot be reconciled by Plaintiff's proffered explanation that his disability was exacerbated by his suspension and termination.

For these reasons, the circuit court was well within its discretion to find Plaintiff's statements truly inconsistent and his explanation for those inconsistencies insufficient. Plaintiff's representations to the Social Security Administration that his PTSD and anxiety attacks make being around people "impossible;" his emotional numbness "completely destroyed" his ability to function in "any work environment;" he finds it "impossible" to attend "any function with people;" and he cannot function in "any meaningful capacity" simply cannot be squared with his MHRA disability discrimination claim that his PTSD does not interfere with the performance of his job.

*Plaintiff Convinced the Social Security Administration to Accept His Inconsistent Position*

8

In addition to the prerequisite that a party made truly inconsistent statements, courts regularly inquire whether the party successfully convinced a court or administrative body in an earlier proceeding to accept the inconsistent position. *Vacca*, 575 S.W.3d at 232-33, 236; *McKinney*, 604 S.W.3d at 690. The uncontroverted fact is that Plaintiff successfully convinced the Social Security Administration in the earlier proceeding to accept his inconsistent position and find him disabled as of June 19, 2017. *See Vacca*, 575 S.W.3d at 232-33, 236; *McKinney*, 604 S.W.3d at 690. The Social Security Administration issued its Notice of Award in July 2018. The Notice informed Plaintiff that he was entitled to disability payments as of December 2017, more than a year before Plaintiff filed his MHRA claim in the circuit court on February 1, 2019. Plaintiff continued to collect Social Security disability benefits for years after December 2017.

Again, the circuit court was well within its discretion to find this factor favored the application of judicial estoppel.

### McKinney and Vacca

Finally, the majority's reliance on *McKinney* and distinction of *Vacca* are misplaced.

In *McKinney*, this Court held the circuit court did not commit plain error in failing to *sua sponte* apply judicial estoppel where judicial estoppel was never raised before the circuit court. 604 S.W.3d at 690-91, 694. To say the least, "[r]eversal on plain error review in a civil case is a high bar," *id.* at 691, and the *McKinney* court's opting not to reverse for plain error offers little guidance in a case in which Employer raised judicial estoppel, the circuit court applied judicial estoppel, and we are asked to reverse that application of judicial estoppel for an abuse of discretion.

Also, the *McKinney* court did not hold that claims for Social Security disability benefits and discrimination claims "are not 'truly inconsistent.'" If that were the *McKinney* holding, then

neither that court nor the majority here would have had any reason to engage in the factual analyses they did. Rather, the *McKinney* court made clear that, precisely because Social Security disability claims and discrimination claims can co-exist in some circumstances, "we must look to the specific factual claims made by Respondent, and determine whether Respondent has 'proffered a sufficient explanation' for any alleged discrepancy." *Id.* at 692 (quoting *Vacca*, 575 S.W.3d at 235) (internal alteration omitted); *see also Vacca*, 575 S.W.3d at 237 (citing *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), "which held judicial estoppel can be applied to prevent a party from making specifically conflicting assertions, first in an administrative application for disability benefits and then in a suit for disability discrimination").

The court's factual analysis in *McKinney* revealed that the employer never offered any accommodation to the plaintiff. *McKinney*, 604 S.W.3d at 693. That fact rendered the plaintiff's representations to the Social Security Administration that she was unable to work entirely accurate, and not inconsistent with her MHRA claim that she would have been able to work with a reasonable accommodation. *Id.* Here, by contrast, Employer accommodated Plaintiff with a service dog in April 2016, more than a year before Plaintiff filed Social Security disability applications claiming he was unable to work, "any kind of work" was "impossible," his ability to function in "any work environment" was "completely destroyed," and he could not function in "any meaningful capacity."

In *Vacca*, our Supreme Court unanimously reversed a jury verdict for the circuit court's failure to apply judicial estoppel. 575 S.W.3d at 225, 238. There, the plaintiff, an ALJ, represented in his application for long-term disability and in his divorce proceeding that muscular dystrophy rendered him totally unable to work, while claiming in his disability discrimination lawsuit that he was able to work with a reasonable accommodation. *Id.* at 226-30.

10

The *Vacca* Court found the plaintiff's representations clearly inconsistent in that he alleged in his application for disability benefits that he was "unable to work at all" and "did not qualify this statement by saying he could work under reasonable accommodation." *Id.* at 237. Virtually indistinguishable are Plaintiff's representations here that "any kind of work" was "impossible" and his ability to function in "any work environment" was "completely destroyed," which Plaintiff did not qualify by saying he could work with a reasonable accommodation.

In *Vacca*, the Supreme Court found the plaintiff's proffered explanation that he was not fully disabled until after he had been terminated to be inconsistent with his claims of total disability in his application for disability benefits filed six months before his termination. *Id.* Here, Plaintiff's explanation that he was not fully disabled until after he had been terminated likewise is inconsistent with his July 2017 application for Social Security disability benefits filed more than six months before his February 2018 termination, as well as his representations in both applications identifying June 19, 2017 as the date on which he became unable to work.

Finally, the *Vacca* Court observed that, as in the present case, the plaintiff was successful in obtaining disability benefits based on his representation that he was unable to work, then argued in his discrimination lawsuit that he was able to work with an accommodation. *Id.*

For all of these reasons, the Supreme Court reversed the circuit court's judgment and applied judicial estoppel. *Id.* at 238.

Conclusion

Based on this record and the governing caselaw, the circuit court cannot be said to have abused its discretion in applying the discretionary equitable doctrine of judicial estoppel. Employer therefore is entitled to judgment as a matter of law on Plaintiff's disability discrimination claim, and the circuit court did not err in granting summary judgment.

11

Cristian M. Stevens, Judge